McDUFFIE et al. v. UNITED STATES.

(Circuit Court of Appeals, Fifth Circuit. November 30, 1915.)

No. 2773

1. CRIMINAL LAW ⟨⟩697—TRIAL—RULINGS ON ADMISSION OF EVIDENCE—EXCEPTIONS.

Exceptions to rulings on the admission of evidence in a criminal case, taken after the evidence has been closed on both sides, are too late.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1645–1650; Dec. Dig. ⟨⟩697.]

2. CRIMINAL LAW ⟨⟩670—TRIAL—EVIDENCE.

The exclusion by the court in a criminal case of all of the books, checks, letters, and other papers pertaining to a business, offered by defendants in a mass, without specifying any part which might be material, held not error.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 757, 1593–1596; Dec. Dig. ⟨⟩670.]

In Error to the United States District Court for the Northern District of Texas; Edward R. Meek, Judge.

Criminal prosecution by the United States against R. H. McDuffie and W. C. Lowery. Judgment of conviction, and defendants bring error. Affirmed.

C. W. Nugent, of Conroe, Tex., and John W. Pope, of Dallas, Tex., for plaintiffs in error.

James C. Wilson, U. S. Atty., and Wm. E. Allen, Asst. U. S. Atty., both of Dallas, Tex.

Before PARDEE and WALKER, Circuit Judges, and SPEER, District Judge.

PARDEE, Circuit Judge. The plaintiffs in error were charged by indictment with misuse of the mails in connection with a scheme to defraud, in violation of section 215 of the Criminal Code of the United States. Act March 4, 1909, c. 321, 35 Stat. 1130 (Comp. St. 1913, § 10385). The indictment contains four counts, the plan or scheme in all being substantially the same. The first two charge that by the scheme in question the defendants intended to secure consignments of produce without paying therefor. In the third and fourth it is charged that in the manner alleged the defendants intended to charge and collect an unearned brokerage from their consignors, and instead of selling the produce of those they represented to bona fide purchasers at the best obtainable price, that they would sell same to themselves under another name as purchaser, at the lowest price the consignors could be induced to accept for such produce.

The scheme to effect the above objects was that defendants would represent themselves to be engaged in the commission or brokerage business under the firm name of McDuffie & Lowery, as marketing agents for growers and shippers of fruit and produce, and that in this manner they would induce shippers to consign to them quantities of such commodities to be sold by said McDuffie & Lowery for the benefit of

such shippers, in Dallas and surrounding territory; that they would engage in the jobbing business under the names of R. E. Rife and Rife Produce Company, at Dallas and Waxahachie, Tex., and when produce was received by them as brokers they would pretend to sell same to R. E. Rife or the Rife Produce Company, which was but another designation for the same concern, conducted by McDuffie & Lowery; and that by means of these fictitious trade-names they would be enabled to conceal their identity and liability from the shippers and to secure the produce of their principals and convert same to their use without paying therefor. Secondly, in other instances, they would pretend to sell such produce at the best obtainable price, and would represent that it had been sold to R. E. Rife or Rife Produce Company, supposedly an independent concern, whereupon they would charge a brokerage of $10 per car for selling to themselves, and, representing themselves and the shippers, would secure such produce at the lowest price for which it could be had, without regard to the interest of their principals.

On the trial both defendants were found guilty upon all four of the indictments, and sentences followed to each of three years in the penitentiary. The case is brought for review to this court on three assignments of error, as follows:

"(1) The court erred in refusing defendant R. H. McDuffie the right to testify in detail as to how he treated the firm known as the Rife Produce Company or R. E. Rife, when the defendants, R. H. McDuffie and W. C. Lowery, would sell produce to R. E. Rife and the Rife Produce Company. That the court erred in restricting the scope of defendants' testimony relative to his transactions with R. E. Rife and the Rife Produce Company, because there is no direct testimony in the record which shows that the defendants formed the Rife Produce Company or used the said R. E. Rife for the purpose of defrauding, and that to have legally convicted them upon the charges in the indictment the government was compelled or would be compelled to show that the manner and trend of all the transactions with R. E. Rife and the Rife Produce Company by evidence would lead to the irresistible conclusion of their guilt, and, that being true, then the defendants were entitled to testify as to all transactions they had with R. E. Rife and the Rife Produce Company, as alleged in the indictment.

"(2) The court erred in permitting any testimony whatsoever to be presented to the jury in connection with the A. C. Quigg transaction with defendants, R. H. McDuffie and W. C. Lowery, because the testimony as shown by the records discloses the fact that all the transactions which led up to the securing and obtaining of and from A. C. Quigg certain potatoes as alleged in the indictment were contracted for and secured before the formation of the Rife Produce Company and before the employment of R. E. Rife by the defendants. That the court erred in permitting the government, over the objection of defendants, to go into and lay before the jury the A. C. Quigg transaction with the defendants in detail, because the records show and did show, at the time counsel for defendants objected to the introduction of the Quigg transaction as testimony, that whatever thing of value had been secured of and from A. C. Quigg was done so by contract entered into by the defendants and A. C. Quigg long prior to the establishment of the so-called artifice and scheme to defraud, as alleged by the government in the indictment.

"(3) The court erred in failing to instruct the jury on the allowing of circumstantial evidence, there being no direct evidence of the formation of any scheme and artifice to defraud by either of the defendants, because this matter was called to the court's attention and a special request made of the court, and requested of the court before he delivered his charge to the jury, such special request and such special charge being in writing."

On page 386 et seq. of the transcript we find the plaintiff in error McDuffie testified in detail with regard to a certain car 1948, said to have been handled by R. E. Rife, as follows:

"Mr. Nugent: Now, Mr. McDuffie, I want you to state to this jury now whether or not, in the handling of this car 1948 through Rife, you treated Rife in that matter the same or different from the way you treated your other customers with reference to rebates, guaranteed prices, etc. A. Treated him the same.

"Mr. Wilson: That is a conclusion; call for the facts. What was the relation?

"The Court: I sustain the objection for this reason: That it would involve enlarging the scope of this investigation too much.

"Mr. Nugent: Will the court permit us at this juncture to respectfully take a bill?

"The Court: Yes.

"Mr. Nugent: We except.

"The Court: The bill will be qualified by the statement of the court that the necessary effect of permitting the question propounded to be answered—the question itself involves a conclusion on the part of the witness—would be that the scope of the investigation would be enlarged thereby, because the government would be permitted to go into an investigation of how the witness on the stand treated each of the purchasers of commodities, or the nature of his transactions; and therefore the question is excluded on the ground that the scope of the inquiry would be so enlarged, and on the further ground that it involves a conclusion of the witness, and, further, that the determination of that fact may be better ascertained from all the facts and circumstances surrounding the transaction rather than from the witness' statement of a conclusion."

The judge's reasons for his ruling are sound.

Again we find, while the same witness was on the stand, the government without objection offered in evidence certain exhibits found in the transcript; whereupon:

"Mr. Nugent: Mr. McDuffie has already identified these books, records, and various checks aggregating about $168,000. We desire now to state that we offer these to the jury and to your honor—this entire mass of testimony in these books, vouchers and checks, of every kind.

"The Court: Of course, if they are offered, they become a part of the record of this case. I would hate to have to go into that evidence as to what they contain. I don't want just an omnibus offering of all the books and everything, without definite testimony or explanation in regard to them. It will be a very expensive matter for one having to appeal, if such a thing should be done in this case, if such a thing should occur, to take up that as a part of the record.

"Mr. Nugent: We feel it is due our client in this case, to be absolutely fair with the court.

"The Court: I don't consider that fair.

"Mr. Nugent: We desire to state that all these books and vouchers and records of every kind are submitted to the government's counsel for examination.

"Mr. Wilson: If they want to point out any particular part, they may do so; but they can't show anything—

"The Court: The court and the jury of course will not go into that evidence in the absence of evidence tending to explain or elucidate them. I would not undertake, and I would not permit the jury, in the absence of explanatory evidence, and the admission of these books in evidence, even if the jury should call for them in some part or portion that had not been theretofore explained by oral evidence on the witness stand; it would not tend to clarify but to confuse.

"Mr. Nugent: I would like to say, at least in my own defense in the matter, this, your honor: That we have absolutely nothing in the record of these

boys to conceal, and we want to say to your honor that we are perfectly willing for your honor and the jury to see anything that we have here, and I tender it now to your honor and to the government's counsel—anything connected with these boys, in any shape, manner, or form. We do that we assure your honor in the very best of faith.

"The Court: It is quite beyond the physical capacity of the court to inquire concerning all these checks, account books, memorandum or cash books, or bank books, beyond the scope of the examination of the witness on the witness stand. I understand the spirit of the offer; that I may not be misunderstood, I say I understand the spirit in which the offer is made. I simply indicate or state the attitude of the court and jury, in the matter of accepting the offer.

"Mr. Nugent: I assure the court I am acting in the highest conception of my duty to the court, acting in the very best faith."

To this ruling no exception appears to have been reserved at the time, but after the evidence was closed on both sides we find the following:

"Both sides closed.

"Be it further remembered that upon the trial of this cause, and while the witness R. H McDuffie was upon the stand, testifying orally on behalf of the defendants, counsel for the defendant propounded to him the following question: Q. Now, Mr. McDuffie, I want you to state to this jury whether or not, in the handling of this car No. 1948 through Rife, you treated Rife in that manner the same or different from the way you treated your other customers with reference to rebates, guaranteed prices, etc? A. Treated him the same.

"Mr. Wilson: That is a conclusion; call for the facts. What was the relation?

"The Court: I sustain the objection for this reason: It would involve enlarging the scope of this investigation too much.

"Mr. Nugent: Will the court permit us at this juncture to respectfully take a bill?

"The Court: Yes.

"Mr. Nugent: We except.

"The Court: The bill will be qualified by the statement of the court that the necessary effect of permitting the question propounded to be answered (the question itself involves a conclusion on the part of the witness) would be that the scope of the investigation would be enlarged thereby, because the government would be permitted to go into the investigation of how the witness now on the stand treated each of the purchasers of commodities and the nature of his transactions with them. The question, therefore, is excluded on the ground that the scope of the inquiry would be so enlarged, and on the further ground that it involves the conclusion of the witness, and, further, that the determination of that fact may be better ascertained from all the facts and circumstances surrounding the transaction rather than from the witness' statement of conclusion, to which action of the court the defendants then and there excepted and still except.

"Be it further remembered that while W. C. Lowery, one of the defendants in this cause, was upon the stand, and after he had testified that long prior to February 1, 1914, he was in the state of Idaho, and that he had met A. C. Quigg, and during the month of November, 1913, had an agreement and understanding with A. C. Quigg, by which he and R. H. McDuffie did obtain of and from A. C. Quigg, certain potatoes to be handled by the firm of McDuffie & Lowery of Dallas, Tex., the following was propounded to the said W. C. Lowery by the district attorney: Q. That understanding—who made that understanding and agreement? A. We had to arrive at—

"Mr. Pope: I want to object to any question in connection with the Quigg matter for this reason: The testimony of this witness has for the first time in this case disclosed, or it has been disclosed for the first time, that this scheme and artifice charged in the indictment was formed, as far as the testimony here is concerned, was formed about February 1, 1914. The wit-

ness has testified that he made a contract or agreement with Quigg to ship cars prior to that date, and the government, we take it, is not entitled to question him as to the Quigg matter, unless they first establish by competent testimony that the scheme or artifice was devised or formed to defraud before that agreement was made, and that scheme or artifice was used, and in use of it they had defrauded some one.

"The Court: I overrule the objection; go ahead.

"Mr. Pope: We would like to have our bill.

'The Court: You may have your bill. The court rules that, even though it was not part of the alleged scheme and artifice to defraud, which is alleged to have been devised, and is not at all pertinent to one of these, it would still be material, and the bill will show. It is material and competent to show and reflect, if it did reflect, on the purpose of the defendants in doing what is alleged to have been done, if done by them. Go ahead.

"To which action defendants excepted and still except."

[1] Exceptions taken to the ruling on the admission of evidence would seem to come too late after the evidence had been admitted practically without objection and the evidence closed on both sides.

[2] But, aside from this, we find no merits in the said assignments of error, because there was direct testimony in the record showing that the defendants formed the Rife Produce Company and used the said R. E. Rife for the purpose of defrauding, and the ruling of the court in this regard, giving the fullest effect that could be claimed, was the excluding of evidence offered in a mass of books, letters, checks, papers and documents, without specifying the particular ones that might possibly be material, all of which would embarrass the court and jury in the regular procedure in the case. Its exclusion, because offered in a mass and not offered separately, did not deny the defendants the right to offer separately and specifically any particular evidence that they deemed material.

The Quigg transaction was testified to at great length without any objection noted, and we find no motion to strike out evidence, no demurrer to the indictment, nor motion for an instructed verdict on the second count.

The third assignment of error is not well taken, because the charge given by the judge is not included in the bill of exceptions, and non constat the point in regard to circumstantial evidence was therein sufficiently covered. Beside this, the proposition submitted in this particular was properly refused, because the evidence showing the formation of the scheme and artifice to defraud charged in the indictment was not wholly circumstantial, and the charge requested would have tended rather to mislead than enlighten the jury.

Judgment affirmed.